ALBERT J. SCHWAB *v.* ZONING BOARD OF APPEALS OF THE TOWN OF DARIEN

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued January 5—decided January 25, 1967

*George B. Smith III,* with whom was *Sidney Vogel,* for the appellant (plaintiff).

*Warren W. Eginton,* with whom, on the brief, was *Edward R. McPherson, Jr.,* for the appellee (defendant).

ALCORN, J. The plaintiff has appealed from a judgment of the Court of Common Pleas sustaining a decision of the Darien zoning board of appeals, which in turn had sustained the Darien zoning and building inspector in notifying the plaintiff that he was violating § 220.18 of the zoning regulations by maintaining a dog kennel on his property.

The plaintiff leases property located in what is designated as an R-⅓ residence zone. At the time the notice was served on him by the building and zoning inspector, he owned and kept six dogs within the confines of this property. He had owned some of these dogs for about three years and, during the last year, had sold five puppies from a single litter of eight. The plaintiff claims that he keeps the dogs as a hobby to exhibit at dog shows and that the five puppies were sold, not as a commercial transaction, but because he did not wish to retain all of the litter. No evidence to the contrary is before us.

The R-⅓ zone permits a one-family residence on one-third of an acre of land. Darien Zoning Regs. § 300 (1957, as amended). It is next to the least restricted of five residential zones. The zoning regulations provide that no building shall be erected and no land shall be used for any purpose except in

conformity with the regulations for the zone in which it is located. § 403. Section 424 provides that any use not specifically permitted by the regulations is prohibited. Under these regulations no use is permissible within a given zone unless it is expressly authorized. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785.

The uses which are permitted in an R-⅓ zone include all those allowed in the three more restricted residential zones, including enumerated principal uses requiring special permits and enumerated accessory uses. Without listing these, it is sufficient to note that none of them, in express terms, permit the maintenance of a dog kennel either under a special permit or as an accessory use. Farming, as defined in the regulations, is, however, permitted in an R-⅓ zone, either as a principal or an accessory use. The plaintiff does not claim to be engaged in farming, but he does rely on that permitted accessory use to justify his maintenance of a kennel on his property. Likewise, it is that accessory use which the zoning and building inspector claimed had been violated. That section of the ordinance reads as follows: "Section 220.18 Farming: Farming shall include the use of a lot, either as a principal use or an accessory use, for the purpose of producing agricultural, horticultural, floricultural, vegetable, and fruit products of the soil, and shall include the raising of horses and other domestic farm animals. Riding academies, livery stables, dog kennels, the breeding, raising or habitation of fur-bearing animals, commercial poultry farms, stands for the sale of produce or the commercial processing of the products of the farm, shall not be included."

The question to be decided is whether that language permits the plaintiff to continue the use which he is making of his property. The adoption of the zoning regulations by the town planning and zoning commission, although local in scope, was basically a legislative process, and in interpreting the language of the regulations, our function is to determine the expressed legislative intent. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* supra. The intent of the legislating body is to be found, not in what it meant to say, but in the meaning of what it did say. *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 581, 192 A.2d 545; *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 344, 170 A.2d 883; *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119; *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 A. 540.

It is immaterial, for present purposes, whether the word "kennel" means a collection of dogs or the quarters in which they are housed. *State* v. *Tripp,* 84 Conn. 640, 645, 81 A. 247; Webster, Third New International Dictionary, p. 1237. This court has had occasion, many times, to discuss the emergence of the dog, aided by statute, from its lowly common-law status as an animal considered "to be 'base', inferior, and entitled to less regard and protection than property in other domestic animals"; *Woolf* v. *Chalker,* 31 Conn. 121, 127; to its current status which accords "the full recognition of property rights in dogs as in other domestic animals." *Soucy* v. *Wysocki,* 139 Conn. 622, 627, 96 A.2d 225; see also *Griffin* v. *Fancher,* 127 Conn. 686, 20 A.2d 95; *Dickerman* v. *Consolidated Ry. Co.,* 79 Conn. 427, 65 A. 289; *Ford* v. *Glennon,* 74 Conn. 6, 49 A. 189; *Wilton* v. *Weston,* 48 Conn. 325, 336.

In a day when countless people regard the dog as

a faithful companion, a staunch guardian, and a family pet, we think it unlikely that the Darien zoning authority actually intended to exclude every dog kennel from a residence zone. It may very well be, as the plaintiff claims, that the intent, as a state of mind, was only to exclude·a commercially operated kennel. Our function, however, is circumscribed, for, as already stated, where the language is plain, we must give effect to the intention expressed in the regulation.

Section 220.18 of the zoning regulations, after defining "farming", specifically states that "dog kennels . . . shall not be included." The statement is unqualified and all inclusive. Its scope is not affected by the portion of the definition of "farming" which includes "the raising of horses and other domestic farm animals." The dog's lowly state in the early common law is accounted for largely because it was excluded from classification with other domestic animals. *Soucy* v. *Wysocki,* supra; *Wilton* v. *Weston,* supra; *Woolf* v. *Chalker,* supra. While the dog has been domesticated, it does not, in the circumstances of the present case, meet the definition of a "domestic farm animal." If emphasis is needed for the fact that this regulation does not include the dog in the term "domestic farm animals", it is found in the express exclusion of a dog kennel from the activities embraced in the definition of "farming." It follows that nothing in § 220.18 of the Darien zoning regulations permits the maintenance of a kennel in an R-⅓ zone. Hence that use, on the plaintiff's property, is prohibited.

There is no error.

In this opinion the other judges concurred.